UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
|     VENCOM, INC. | ) | |
| | ) | CASE NO.  03-10508 |
|                 Debtor(s) | ) | |
| | ) | |
|     MARK FLENER, TRUSTEE | ) | |
| | ) | AP NO.  05-1016 |
|                 Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
|     DARLENE TURNER | ) | |
|     CHRISTINE MORGAN | ) | |
|     ROBERT L. TURNER | ) | |
| | ) | |
|                 Defendant(s) | ) | |

**MEMORANDUM-OPINION**

This matter came before the Court for trial on the Complaint to Recover Property of the Estate of Plaintiff Mark Flener, Trustee for Vencom, Inc. ("Trustee") against Defendants Darlene Turner, Christine Morgan and Robert L. Turner.  The Court considered the testimony and evidence submitted at trial, the arguments of counsel and the post-trial briefs of the parties.  For the following reasons, the Court will enter Judgment in favor of the Trustee.  The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

**FINDINGS OF FACT**

Vencom, Inc. ("Vencom") was incorporated in Florida on December 14, 1994. Defendant Robert L. Turner owned 400 shares of stock, 400 shares were issued to his wife Darlene Turner and 400 shares were issued to George Sexton. Robert Turner served as President and was later elected as sole Director. By 1996, all of Sexton's shares were transferred to Robert L. Turner. Vencom sold computer software to floor dealers and their suppliers. The source code to the software was owned by Christine Morgan, Robert L. Turner's mother. In 2002, Turner stopped selling licenses for the Vencom software. Robert Turner, individually, continued to service these licenses until 2003. Around this same time period, Robert Turner started a new business, a sole proprietorship called Vencom B2B. This business, like Vencom, sold and licensed software that facilitated communication between floor dealers and their suppliers. Several of Vencom B2B customers were former Vencom customers.

Vencom's tax returns from 1996 through 2000, showed that the company rarely made a profit. The tax returns for 2001 and 2002 were not produced. Robert L. Turner testified that his mother, Christine Morgan, mortgaged her home, gave the money to him and he in turn loaned it to Vencom. Each of the tax returns produced showed a loss or very little profit. The 1996 through 1999 returns showed a balance of loans from shareholders that began at $125,832 in 1996 with a declining balance of $34,697 in 1999.

Vencom's business wound down in 2003. The company tax records showed that no salary, wages or compensation was paid to Robert L. Turner and the other officers of the company from 1996 to 2000. Vencom's profit and loss statements for 2001 and 2002 also showed that Turner received no salary.

When Vencom was initially formed it operated out of Christine Morgan's home in Florida. Christine Morgan was later diagnosed with Alzheimer's disease and the Florida home was sold in 2002. Prior to that time, Robert L. Turner contends he commuted between his home in Columbia, Kentucky and Morgan's home in Florida and ran the business out of both places.

The bank statements of Vencom for 1999 through 2002 showed a disparity in withdrawals from the account and the business expenses for each year. In each case, the withdrawals exceeded the business expenses. The total amount of the shortfall for those years on non-business related expenses was $135,919.32. The evidence at trial established that this shortfall resulted from Vencom paying various living and personal expenses of all three Defendants. Examples of such expenditures included payment to Darlene Turner's divorce lawyer, payments to her son and daughter, payments by numerous checks to cash, allegedly for company travel expenses, but not listed in the business records as travel expenses, personal credit card payments, and lease payments for Robert L. Turner's personal vehicle.

On or about August 14, 2002, Robert L. Turner filed a Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code. He did not list Vencom as a creditor on his Petition. He received his discharge on November 14, 2002.

On October 21, 2002, following anti-trust litigation, a company named H.J. Martin received a Judgment against Vencom in the amount of $58,000.

On or about March 12, 2003, Vencom filed a Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code.

On or about March 11, 2005, the Trustee initiated this adversary proceeding against the Defendants. The Complaint contains six Counts. The first is a claim for misappropriation of

corporate opportunity, corporate funds and trade secrets.  The second is for piercing the corporate veil of Vencom.  The third is for unlawful distributions pursuant to Florida statute §607.0834.  The fourth is for tortious interference with contractual relations and prospective contractual relations.  The fifth is for fraudulent transfers pursuant to 11 U.S.C. §548.  The sixth is based on the personal liability of Robert L. Turner.  The last count claims that to the extent that the claims of Vencom are not barred by Robert L. Turner's discharge in his personal bankruptcy or for those actions which occurred after the filing of his individual Petition, all claims asserted in the Complaint are also asserted against Robert L. Turner.

On July 12, 2006, Trustee moved to amend the Complaint against Robert L. Turner to assert a claim that all claims are nondischargeable pursuant to 11 U.S.C. §523(a)(3)(B) because they were not scheduled on his Chapter 7 Petition and are nondischargeable pursuant to 11 U.S.C. §523(a)(4) and (a)(6).  Turner objected to the amendment due to its timing, five days prior to trial.  The Court heard arguments on the Motion to Amend the Complaint at trial and took the issue under submission.  Both parties filed post-trial briefs on the matter.

## LEGAL ANALYSIS

The Court first addresses the Trustee's Motion to Amend the Complaint.  Defendant Robert L. Turner vigorously objects to the amendment claiming the addition of the new claim against him five days prior to trial is unduly prejudicial.  The decision whether to grant leave to amend a complaint is within the discretion of the Court.  Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1041 (6th Cir. 1991).  Delay in proposing the amendment is an insufficient reason for denying leave to amend, regardless of how long the delay.  Wallace Hardware Co., Inc. v. Abrams, 223 F.3d 382, 409 (6th Cir. 2000), citing, Moore v. City of Paducah, 790 F.2d 557, 559-62 (6th Cir. 1986).

Furthermore, Rule 7015(a) of the Federal Bankruptcy Rules of Procedure provides that leave to amend a pleading should be "freely given when justice so requires." The thrust of the rule is to re-enforce the principle that cases should be tried on the merits rather than the technicalities of the pleadings. Id.   Guided by these principles the Court finds it appropriate to grant the amendment. When the amendment is viewed in light of the original Complaint, the Court does not find it to be a new claim. Rather, it is an elaboration on Count VI of the original Complaint. There was no need for Defendants to conduct further discovery to adequately defend the claim. There is no actual prejudice to Defendant Robert L. Turner by allowing the claim. Therefore, the Trustee's Motion to Amend the Complaint is granted.

It is also important to note that Robert L. Turner's bankruptcy did not discharge any claims Vencom has against him because Vencom was not listed as a creditor on his Petition. See, 11 U.S.C. §523(a)(3). While Vencom may have had actual notice of Turner's bankruptcy, it is not reasonable to assume that as the sole shareholder and director of the corporation that he would have asserted any such claims on its behalf. The statute of limitations on such claims was tolled until the Trustee was appointed. See, In re Blackburn, 209 B.R. 4,11 (Bankr. M.D. Fla. 1997).

   a.   Counts I, II and III - Misappropriation of Corporate Opportunity, Corporate Funds, and Trade Secrets, Piercing the Corporate Veil of Vencom and Unlawful Distribution under Florida Corporate Law.

It is clear from the evidence submitted at trial that the Defendants misappropriated funds of Vencom for their own personal use. Defendants attempted to justify these distributions as repayment of loans to Vencom or repayment of legitimate business expenses. The tax returns, cancelled checks and profit and loss statements proved otherwise. Additionally, there was no documentary evidence of any loans made by the Defendants to Vencom. In fact, the evidence

established the misappropriation of a total of $135,919 from Vencom to the Defendants. The Defendants did not adequately rebut this evidence.

Only Defendant Robert L. Turner testified live at trial and the Court found him to be a less than credible witness. His trial testimony was often impeached by his earlier deposition testimony. At trial he testified that he completely changed his accounting method for trial from the accrual method to a cash basis. Such action established his attempts to hide the misappropriation of Vencom's assets.

The Defendants treated the corporate account of Vencom as if it were their own personal account. The shareholder loans were paid down at a time when the company was struggling to survive. Furthermore, although the payments were shown on the company's tax returns, there was no written documentation of the loans whatsoever. These payments constitute unlawful distributions under Florida corporate law and Defendants are personally liable for these distributions. See, F.S.A. §607.0834 and §607.06401.

    b.    Count IV Tortious Interference with Contractual Relations and Prospective Contractual Relations.

In Count IV of the Complaint, the Trustee asserts that the Defendants' intentionally diverted to themselves Vencom's customer lists, contracts and tortiously interfered with Vencom's contractual relations and prospective contractual relations. The elements of tortious interference with a contract or business relationship are (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) an intentional and unjustified interference with that relationship; and (3) damage to the plaintiff as a result of the defendant's actions. Wackenhut Corp. V. Maimone, 389 So.2d 656 (Fla. App. 1980).

The evidence at trial established that Defendant Robert L. Turner began a new software company called Vencom B2B and that Vencom B2B serviced many of Vencom's customers. Robert L. Turner testified that much of these services had been paid for in advance by Vencom's customers. This evidence did not establish an intentional or unjustified interference with existing business relationships of Vencom. There also was no specific evidence presented at trial establishing damages under this Count of the Complaint. Plaintiff failed to establish the claims under Count IV of the Complaint. The Court will, therefore, enter Judgment in favor of Defendants on this claim.

      c.      <u>Count V – Fraudulent Transfers Pursuant to 11 U.S.C. §548.</u>

In Count V of the Complaint, the Trustee contends he is entitled to avoid payments made by Vencom to its creditors for the one year prior to Vencom's filing. The Court finds the evidence sufficient to support a claim under 11 U.S.C. §548(a)(1)(B). Under this Section, the Trustee had to prove that the Debtor voluntarily or involuntarily received less than reasonably equivalent value in exchange for such transfers or obligations and that the Debtor was insolvent on the date the transfer was made or became insolvent as a result of the transfer.

The decision as to whether a transfer is for reasonably equivalent value is a question of fact and the Court must look to the circumstances surrounding the transfer. <u>In re Chase & Sanborn Corp.</u>, 904 F.2d 588, 593 (11th Cir. 1990); <u>In re Suburban Motor Freight, Inc.</u>, 124 B.R. 984 (Bankr. S.D. Ohio 1990); and <u>Klein v. Tabatchnik</u>, 610 F.2d 1043 (2d Cir. 1979). The Court must examine the transfers from Vencom's account one year prior to the date of the filing of Vencom's Petition, March 12, 2003. Although not all of the checks from Vencom were produced for the one year period prior to the date of the Petition, those that were produced show company checks for non-business related or personal expenses of the Defendants. <u>See</u>, Trustee's Exhibit 1, 1.40 through

1.55. These checks are made payable on the Vencom corporate account to Darlene Turner, various stores, credit card companies, Darlene Turner's daughter and son, and the company that leased a vehicle to Robert L. Turner. There was no credible evidence submitted that Vencom received reasonably equivalent value for these transfers. The evidence further establishes that given the timing of the transfers, Vencom was insolvent as of preparation of its 2002 Profit and Loss Statement which showed net income of only $503.17. The Court must rely on this since the 2002 tax returns for Vencom, Inc. were not produced. Accordingly, those transfers set forth in Trustee's Ex.1, 1.40-1.55, are avoided for the benefit of the estate of Vencom pursuant to 11 U.S.C. §544.

       d. <u>The Amended Complaint.</u>

The Trustee also contends that all claims stated against Robert L. Turner are nondischargeable pursuant to 11 U.S.C. §523(a)(4) and 11 U.S.C. §523(a)(6). The Trustee did not pursue the claim under §523(a)(4) related to fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. However, in his post-trial brief the Trustee contends that Robert L. Turner's use of Vencom's funds to pay personal debts amounts to a willful and malicious injury pursuant to 11 U.S.C. §523(a)(6). In order to except a debt from discharge under §523(a)(6), the debtor must have engaged in a "deliberate and intentional injury." <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 61 (1998). "Only acts done with the intent to cause injury – and not merely acts done intentionally — can cause willful and malicious injury." <u>In re Markowitz</u>, 190 F.3d 455, 463 (6th Cir. 1999). The debtor must have intended the consequences of the act, not merely the act itself. <u>Geiger</u>, 523 U.S. at 61. The Court does not find that Robert L. Turner's action in using Vencom's funds to pay personal debts rises to the level of a willful and malicious injury under 11 U.S.C. §523(a)(6). The Court does not find Turner's actions "willful and malicious" as case law defines

-8-

those terms in the statute. Accordingly, the Court will not find the debts nondischargeable pursuant to 11 U.S.C. §523(a)(6).

## **CONCLUSION**

For the foregoing reasons, the Court will enter Judgment in favor of the Plaintiff Trustee as set forth in this Memorandum-Opinion. A Judgment accompanies this Memorandum-Opinion.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| VENCOM, INC. | ) | |
| | ) | CASE NO. 03-10508 |
| Debtor(s) | ) | |
| | ) | |
| MARK FLENER, TRUSTEE | ) | |
| | ) | AP NO. 05-1016 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DARLENE TURNER | ) | |
| CHRISTINE MORGAN | ) | |
| ROBERT L. TURNER | ) | |
| | ) | |
| Defendant(s) | ) | |

## **JUDGMENT**

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Judgment is entered in favor of Plaintiff Mark Flener, Trustee for Vencom, Inc. and against Defendants Darlene Turner, Christine Morgan and Robert L. Turner on Counts I, II, III and V of the Complaint to Recover Property of the Estate of Vencom, Inc.

This is a final and appealable Judgment and there is no just reason for delay.